UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LAWRENCE HART, *et al.*, | ) |
| | ) CASE NO. C17-1932RSM |
| Plaintiffs, | ) |
| | ) ORDER GRANTING IN PART AND |
| v. | ) DENYING IN PART MOTION TO |
| | ) DISMISS |
| CF ARCIS VII LLC d/b/a THE CLUB AT | ) |
| SNOQUALMIE RIDGE d/b/a TPC AT | ) |
| SNOQUALMIE RIDGE and d/b/a | ) |
| SNOQUALMIE RIDGE GOLF CLUB, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## I. INTRODUCTION

This matter comes before the Court on Defendants' Motion to Dismiss. Dkt. #20. Defendants argue that Plaintiffs' claims should be dismissed in their entirety, with prejudice, because Plaintiffs fail to state any claim upon which relief may be granted. *Id.* Plaintiffs oppose the motion. Dkt. #23. For the reasons discussed below, Plaintiffs' claims will be dismissed in part as discussed below.

## II. BACKGROUND

This matter was initially filed in King County Superior Court on or around December 8, 2017. Dkt. #1. Defendants removed the matter to this Court on December 28, 2017, pursuant to the Class Action Fairness Act ("CAFA"), and, in the alternative, on the basis of diversity

ORDER
PAGE - 1

jurisdiction. *Id.* Since the removal of this matter, Plaintiffs have file a Second Amended Complaint. Dkt. #18. Plaintiffs allege as follows:

> 4.1 Home to the only Jack Nicklaus Signature Course in Washington, the Club [at Snoqualmie Ridge] is a membership-only golf and country club located in Snoqualmie, Washington.
>
> 4.2 From its founding to the present, the Club has offered Refundable Memberships for sale to the general public. Those who purchase Refundable Memberships pay a large, onetime membership fee in the tens of thousands of dollars ("Membership Fee"), and pay dues each month afterward.
>
> 4.3 To become Club members, applicants must also complete and agree to abide by a Membership Agreement and the Club's Membership and Operating Policies (the "Rules").
>
> 4.4 Defendant Brightstar owned and operated the Club through July 2013 when it sold the Club to the Club Operator, Defendant CF Arcis VII.
>
> 4.5 Brightstar advertised Refundable Memberships on its public website and included the Refundable Memberships in form contracts.
>
> 4.6 In concert with Defendants CF Arcis VII, Arcis Equity, Arcis Golf, and Mr. Walker, the Club Operator expressly and impliedly assumed the obligations of Defendant Brightstar with respect to current and former members, except with respect to the obligations under the Rules.
>
> 4.7 Plaintiffs purchased their Refundable Memberships prior to the 2013 sale of the Club. The Rules in existence prior to 2013 give members the right to voluntarily resign and receive a refund of a portion of the Membership Fee paid to join the Club. These Rules entitle resigning members to receive refunds once their memberships are re-issued to new members, with the refund amounting to 70 percent of the of the Membership Fee published at the time the Club Operator re-issues the membership. While they wait for their memberships to be reissued, resigning members are placed on a waiting list that the Club Operator maintains ("Waiting List").
>
> 4.8 In May 2013, several months before the Arcis Defendants purchased the Club, they colluded with Brightstar to surreptitiously change the Rules (the "Revised Rules") without telling the members they had done so. A true and correct copy of the Revised Rules is attached as Exhibit A.
>
> 4.9 The Revised Rules changed Club procedures in two significant ways. First, they altered the refund procedure. The new refund procedure increased the number of Refundable Memberships that needed to be sold before a

former member could receive a refund. Prior to 2013, for every three new golf memberships sold, the former member at the top of the Waiting List would receive their refund. Under the Revised Rules, a golf membership was refunded for every four new golf memberships issued.

4.10 Second, the Revised Rules also authorized — for the first time in Club history — the sale of non-refundable golf memberships ("Non-Refundable Memberships"). These Non-Refundable Memberships are approximately half the price of Refundable Memberships. Except for the difference in price and refundability, the Non-Refundable Memberships are indistinguishable from the Refundable Memberships purchased by Plaintiffs and class members. *See* http://www.clubatsnoqualmieridge.com/membership (last visited August 3, 2017).

4.11 Plaintiffs did not see the Revised Rules, and therefore did not learn of the material and adverse revisions contained within, until August 2015 when the Club Operator provided a copy.

4.12 The Club Operator has since generated millions from the sale of Non-Refundable Memberships. Meanwhile, on information and belief, the sale of Refundable Memberships has all but ceased since the Non-Refundable Memberships became available for purchase. As a result, the refundability of the Refundable Memberships is merely illusory.

4.13 The Rules in place prior to 2013 required that members receive notice of potential Rule amendments by mail or hand-delivery. To ensure compliance, the Rules also prohibited Rule amendments from becoming effective unless members received such notice.

4.14 In addition, the Rules in place prior to 2013 required two-thirds of the Club's members to approve Rule amendments that would materially adversely affect the rights of members. Amendments that make it more difficult for members to receive refunds of their Refundable Membership Fees materially adversely affect the rights of members.

4.15 When Defendants changed the Rules in 2013, they did not mail or hand-deliver to members the Revised Rules, which materially adversely affected the ability of Club members to receive refunds of their Refundable Memberships. Nor did Defendants seek or obtain the approval of two-thirds of the members. As a result, the Revised Rules are not valid.

4.16 On information and belief, Defendants drafted the Revised Rules to prevent members from receiving refunds of their Refundable Membership Fees.

ORDER
PAGE - 3

> 4.17 Moreover, because Defendants drafted and adopted the Revised Rules in secret and without notice to Plaintiffs and proposed class members, Plaintiffs and proposed Class members could not take advantage of a provision in the Rules that allows Club members to resign, avoid the Waiting List procedure, and immediately receive 100 percent of the Membership Fees they paid to join the Club.
>
> 4.18 On information and belief, Defendants Brightstar, CF Arcis VII, Arcis Golf, Arcis Equity, and Mr. Walker sanctioned, directed, and participated in the drafting and implementation of the Revised Rules, and had actual knowledge that the Rules were revised without notice to members, that the Revised Rules would prevent members with Refundable Memberships from receiving refunds of their Membership Fees, and that the Revised Rules did not receive formal approval by a two-thirds vote of the Club membership. Because Defendants Brightstar, CF Arcis VII, Arcis Golf, Arcis Equity, and Mr. Walker directed, participated and/or ratified or approved of this wrongful conduct, they are directly liable.
>
> 4.19 The Club's refund policies were and continue to be dictated, coordinated, negotiated and explained to members by Defendants CF Arcis VII, Arcis Golf, Arcis Equity, and Defendant Walker.
>
> 4.20 The Arcis Defendants continue to sell Non-Refundable Memberships, and continue failing to provide refunds to Class members, based on the ratio set forth in the pre-2013 Rules.
>
> 4.21 The changes in the Club's refund policies not only injured Plaintiffs but also injured hundreds of people on the refund list.

Dkt. #18 at ¶¶ 4.1-4.21.

As a result of these allegations, Plaintiffs bring claims against Defendants for violations of the Washington Consumer Protection Act ("CPA"), breach of contract, and conversion. *Id.* at ¶¶ 6.1-9.4.

### III. DISCUSSION

**A. Legal Standard**

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir.

1996). However, the court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678. This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Absent facial plausibility, Plaintiff's claims must be dismissed. *Twombly*, 550 U.S. at 570.

Though the Court limits its Rule 12(b)(6) review to allegations of material fact set forth in the Complaint, the Court may consider documents of which it has taken judicial notice. *See* F.R.E. 201; *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). Both parties ask the Court to take judicial notice of a number of documents. The Court takes judicial notice of the documents attached to the Declaration of Rebecca J. Francis in support of Defendants' prior motion to dismiss, which are referenced within the Complaint and form the basis of Plaintiffs' allegations. *See* Dkt. #11, Exs. A-D. The Court also takes judicial notice of the document referenced in, and filed with, the Second Amended Complaint. Dkt. #18, Ex. A. Finally, the Court takes judicial notice of the fact that the Club at Snoqualmie Ridge operates a website through which it advertises golf memberships, but only in recognition of that fact, and not for the truth of any specific contents contained therein. F.R.E. 201(b).

**B. Plaintiffs' Complaint**

  *1. Consumer Protection Act Claim*

Defendants first assert that Plaintiffs' claim for violations of the CPA must be dismissed. Dkt. #20 at 7-11. "To prevail in a private [Consumer Protection Act] claim, the plaintiff must prove (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting

the public interest, (4) injury to a person's business or property, and (5) causation." *Panag v. Farmers Ins. Co. of Washington*, 166 Wn.2d 27, 204 P.3d 885, 889 (Wash. 2009) (citing *Hangman Ridge Training Stables v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 786, 719 P.2d 531 (Wash. 1986)). Defendants argue that Plaintiffs fail to allege any public interest impact, cannot allege a deceptive or unfair act, and do not plausibly allege a cognizable injury under the CPA. Dkt. #20 at 7-17. Plaintiffs respond that they have alleged adequate facts to support all elements of a CPA claim. Dkt. #23 at 10-21.

With respect to Defendants' public interest argument, the Court agrees that Plaintiffs have failed to show a public interest impact under the circumstances of this case. Washington courts have explained that a plaintiff can establish the lawsuit would serve the public interest by showing a likelihood that other plaintiffs have been or will be injured in the same fashion. *Michael v. Mosquera-Lacy*, 165 Wn.2d 595, 604-05, 200 P.3d 695 (2009) (quoting *Hangman Ridge*, 105 Wn.2d at 790). This Court considers four factors to assess the public interest element when a complaint involves a private dispute: (1) whether the defendant committed the alleged acts in the course of his/her business, (2) whether the defendant advertised to the public in general, (3) whether the defendant actively solicited this particular plaintiff, and (4) whether the plaintiff and defendant have unequal bargaining positions. *Id.* (citing *Hangman Ridge*, 105 Wn.2d at 791). The plaintiff need not establish all of these factors, and none is dispositive. *Id.*

As this Court has previously noted, although the CPA was amended in 2009, courts have not interpreted this amendment as abandoning prior tests related to the public interest factor. *See Jet Parts Eng'g, Inc. v. Quest Aviation Supply, Inc.*, No. C15-0530RSM, 2015 WL 4523497, at *3-*4 (W.D. Wash. July 27, 2015) (considering both the 2009 amendments and the *Hangman*

*Ridge* factors). The *Hangman Ridge* factors are still relevant in analyzing public interest impact and are useful in interpreting the 2009 amendments.

In this case, Plaintiffs do not allege that persons other than members holding Refundable Memberships as of 2013 were injured by the amendment of the Rules. The Court interprets the 2009 amendments' language of "injuring other persons" to relate to persons not already such members. This interpretation is consistent with both pre-amendment and post-amendment case law. *See Behnke v. Ahrens*, 172 Wn. App. 281, 295–96, 294 P.3d 729 (2012) (dismissing plaintiffs' claims on summary judgment because they failed to provide evidence that defendants' allegedly deceptive act was repeated with other clients or was likely to be repeated with future clients); *Jet Parts Eng'g, Inc.*, 2015 WL 4523497, at *4, *7 (dismissing plaintiff's CPA claim with prejudice, finding that the public interest element was not met when defendants' conduct did not extend beyond the two parties to two distribution agreements, and the allegedly deceptive act was unlikely to be repeated); *Stiegler v. Saldat*, 2015 WL 13686087 (W.D. Wash. Oct. 23, 2015).

Plaintiffs argue that, because at least 100 other persons were injured, the public interest element is met under the 2009 amendments, specifically RCW 19.86.093(3)(a) ("injured other persons"). Dkt. #23 at 15-16. Every one of those persons, however, was a member of the Golf Club, and no *other* persons were allegedly injured. Because Plaintiffs do not allege anyone outside the Club was injured, the Court concludes that Defendants' alleged conduct has not "injured other persons" within the meaning of RCW 19.86.093. Accordingly, Plaintiffs fail to sufficiently plead the public interest element, and therefore cannot support a CPA claim. Thus, the CPA claim will be dismissed. Further, because the Court has determined that the public

interest element has not been met, it is not necessary to reach Defendants' alternative arguments for dismissal of the CPA claim. *See* Dkt. #20 at 11-17.

   *2. Conversion Claim*

The Court next turns to Plaintiffs' claim for conversion. Defendants argue that this claim must be dismissed because Plaintiffs allege no facts suggesting that the Arcis Defendants wrongfully received any money from them. Dkt. #20 at 17-19. Further, Defendants argue that Plaintiffs have no "property interest" in any money that Defendants received from the sales of Non-Refundable Memberships. *Id.* The Court agrees.

As Washington state courts have explained:

> Rooted in the common law action of trover, [conversion] occurs when, without lawful justification, one willfully interferes with, and thereby deprives another of, the other's right to a chattel. It requires that the plaintiff have a possessory or other "'property interest'" in the chattel, and it treats money as a chattel only if the defendant "wrongfully received" the money or "was under obligation to return the specific money to the party claiming it." Absent a "property interest" of the required type, an action for conversion will not lie, for at most the defendant has only failed to pay an unsecured debt.

*Davenport v. Wash. Educ. Ass'n*, 147 Wn. App. 704, 721-22, 197 P.3d 686, 695 (Div. II 2008). In this case, Plaintiffs allege that conversion occurred when Defendants "unilaterally decided they would funnel money they received from the sales of Non-Refundable Memberships into the Club rather than paying refunds to Plaintiffs and Class members on the Waiting List." Dkt. #23 at 22.

Plaintiffs have failed to state a claim for conversion. Plaintiffs allege that the Rules in existence prior to 2013 give members the right to voluntarily resign and receive a refund of a portion of the Membership Fee paid to join the Club. Dkt. #18 at ¶ 4.7. These Rules entitle resigning members to receive refunds once their memberships are re-issued to new members,

with the refund amounting to 70 percent of the of the Membership Fee published at the time the Club Operator re-issues the membership. Dkt. #18 at ¶ 4.7. Plaintiffs do not acknowledge, however, that the Rules in existence prior to 2013 entitled resigning members to receive refunds after the third sale/reissuance of a membership in the *same category* as the membership to be refunded. Dkt. #11, Ex. B at ¶ 3.2 (a) and (c). Plaintiffs never held Non-Refundable memberships, and therefore would not have been entitled to a refund after the sale of such memberships under the Rules they claim govern their refunds. While it appears that the Rules for refunds have since changed, Plaintiffs make no specific allegations with respect to those revised refund Rules, other than that they changed the ratio of memberships purchased prior to refunding memberships. Accordingly, Plaintiffs fail to demonstrate any property interest in the money received from Non-Refundable memberships and cannot make a claim for conversion. As a result, the claim will be dismissed.

   *3. Breach of Contract Claim*

   The Court next addresses Plaintiffs' breach of contract claim. To state a contract claim, Plaintiffs must allege facts showing: "(1) a contract that imposed a duty, (2) breach of that duty, and (3) an economic loss as a result of the breach." *Myers v. State*, 152 Wn. App. 823, 827-28 (2009). Defendants argue that this claim must be dismissed because Plaintiffs do not allege a breach or damages resulting from a breach. Dkt. #20 at 19-24. Plaintiffs respond that they have sufficiently pleaded all elements of a breach of contract claim. Dkt. #23 at 6-10.

   Plaintiffs allege that "Defendants breached various terms and conditions of the Rules including, but not limited to, amending the Rules without providing notice, amending the Rules without the requisite two-thirds vote of members, and materially adversely affecting Plaintiffs and Class members' refund rights." Dkt. #18 at ¶¶ 8.4 and 8.7. Plaintiffs also allege that "[t]he

Arcis Defendants continue to breach the Rules by continuing to offer for sale Non-Refundable Membership, while failing to provide refunds to those on the Waiting List according to the ratio required by the Rules." Dkt. #18 at ¶ 8.9.

Plaintiffs rely on three provisions of the 2008 Rules for the basis of their claims. Paragraph 6.2 provides:

> AMENDMENT. Club Operator reserves the right, in its sole and absolute discretion, to amend these Membership and Operating Policies at any time and in any manner which it deems appropriate, except that no amendment shall materially adversely affect the rights of any existing Member under Section 3.2(b) unless approved by at least two-thirds of the affected Members. Any amendment shall become effective when notice thereof is delivered to the Members.

Dkt. #11, Exh. B at ¶ 6.2.

Paragraph 3.2(b)(i) provides, in relevant part:

> REFUNDS. A resigning member shall have no right to any payment upon termination of membership except as follows:
>
> (i) In the event of voluntary resignation of an Individual Golf Membership … the former Member shall be entitled to receive 70% of the Membership Fee published at the time Club Operator reissues the resigned or terminated membership pursuant to Section 3.2(c) … to be paid within 30 days after reissuance.

*Id.* at ¶ 3.2(b)(i).

Finally, paragraph 6.1 provides in relevant part:

> NOTICES. Except as otherwise specifically provided in these Membership and Operating Policies, all notices or other communications (other than regular statements of account) required to be given or made hereunder shall be in writing and shall be delivered or mailed…. Notices to a Member shall be addressed to the Member at the address specified in the Member's Membership Agreement, unless the Member has requested that notices be given at a different address by written notice to Club Operator….

ORDER
PAGE - 10

*Id.* at ¶ 6.1. Plaintiffs argue that, together, these provisions impose on Defendants a duty to give members notice of a proposed rule change to their refund rights, and an obligation to obtain the approval of two-thirds of the membership before such change can be effective. Dkt. #23 at 8.

While Defendants disagree with the interpretation of the contract provisions set forth by Plaintiffs, *see* Dkt. #25 at 9-11, at this stage of the proceedings, and accepting Plaintiffs' factual allegations as true, Plaintiffs have alleged sufficient facts to support a claim that Defendants breached a duty owed to them. Thus, the Court will not dismiss the breach of contract claim on the basis that Plaintiffs failed to adequately allege a breach.

Likewise, the Court finds that Plaintiffs have adequately pleaded damages at this stage of the proceeding. Defendants argue that Plaintiffs merely complain about a delay in their refunds. Dkt. #20 at 21-22. However, Plaintiffs have specifically alleged money damages, even if the amount of such damages in uncertain at this time. *See* Dkt. #18 at ¶ 8.8. Plaintiffs also seek equitable relief. *Id.* at ¶ ¶ 5.4.9 and 8.13. Accordingly, the Court will not dismiss the breach of contract claim on the basis that Plaintiffs failed to adequately allege damages.

*4. Claims Against Mr. Walker*

Finally, the Court turns to Plaintiffs' claims against individual Defendant Blake S. Walker. According to Plaintiffs, Mr. Walker:

> is the Chairman, CEO and President of Arcis Golf, and the CEO and managing partner of Arcis Equity, who admits "he has been involved in all phases of the firm's strategy and development since its founding." *See* https://www.arcisgolf.com/about-arcis-golf (last visited Aug. 1, 2017); *see also* http://www.arcisequity.com/about-arcis-equity-partners (last visited Aug. 1, 2017) ("He has been involved in all phases of the firm's strategy and development since its founding in March 2013."). Indeed, in September 2016, Mr. Walker personally traveled to Washington from Texas to meet with Club members who were angry about the changes the Arcis Defendants made to the refund policy. As the CEO of both companies, on information and belief, Mr. Walker intentionally used Arcis Golf and Arcis Equity to strip CF Arcis VII of money received as a result of the sale of non-refundable

ORDER
PAGE - 11

> memberships. Because Mr. Walker intentionally used these entities to violate or evade a duty owed to the members, the limited liability company form should be disregarded and liability attached to Defendants Arcis Golf, Arcis Equity, and Mr. Walker.

Dkt. #18 at ¶ 3.8. Defendants argue that all claims against Mr. Walker should be dismissed because Plaintiffs fail to allege sufficient facts to pierce the corporate veil. Dkt. #20 at 22-24. The Court agrees.

The alter ego theory derives from the notion that courts should not respect the separateness of a corporation and its parent where the parent exerts such an amount of control and dominance over the corporation that it becomes a mere shell or "alter ego" of the parent for accomplishing improper purposes. *United States v. Bestfoods*, 524 U.S. 51, 61-2, 118 S. Ct. 1876, 141 L. Ed. 2d 43 (1998). To pierce the corporate veil, a plaintiff must show (1) the corporate form was used to violate or evade a duty, and (2) the corporate veil must be disregarded to prevent loss to an innocent party. *Wash. Water Jet Workers Ass'n v. Yarbrough*, 151 Wn.2d 470, 503, 90 P.3d 42 (2004).

Here, Plaintiffs' allegations are no more than a recitation of the elements. To survive a motion to dismiss, a plaintiff must allege specific facts supporting both of the necessary elements. Accordingly, the Court will dismiss the claims against Mr. Walker as they are all premised on the application of the corporate veil piercing doctrine.

**C. Leave to Amend**

Ordinarily, leave to amend a complaint should be freely given following an order of dismissal, "unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987); *see also DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) ("A district court does not err in denying leave to amend where the amendment would be futile." (citing *Reddy v. Litton Indus., Inc.*, 912

F.2d 291, 296 (9th Cir. 1990)). The Court will allow Plaintiffs limited amendment as follows: the Court declines leave to amend the CPA or conversion claims against any of the Defendants, including Mr. Walker, on the basis that such amendment would be futile, particularly given the circumstances of this case and the specific deficiencies discussed above. However, with respect to the breach of contract claim against Mr. Walker, based on the arguments made by Plaintiffs in response to this motion, the Court can conceive of facts that could be alleged to cure the deficiencies with those claims. Thus, Plaintiffs will be granted leave to amend the breach of contract claim with respect to Mr. Walker based on the corporate veil piercing doctrine.

## IV.     CONCLUSION

Having reviewed Defendants' motion, Plaintiffs' opposition thereto, and the Reply in support thereof, along with judicially-noticed documents and the remainder of the record, the Court hereby finds and ORDERS:

1. Defendants' Motion to Dismiss (Dkt. 20) is GRANTED IN PART and DENIED IN PART as discussed above, with leave to amend the breach of contract/piercing the corporate veil claim against Mr. Walker only. Any amended complaint shall be filed **no later than 20 days from the date of this Order**. Should Plaintiff decline to file any amended complaint, their breach of contract claim against Mr. Walker will be dismissed with prejudice, and Mr. Walker will be dismissed as a Defendant in this case.

2. Plaintiffs' CPA and conversion claims are DISMISSED as to all Defendants with prejudice.

3. Plaintiff's breach of contract claim against Defendants CF ARCIS VII LLC d/b/a THE CLUB AT SNOQUALMIE RIDGE d/b/a TPC AT SNOQUALMIE RIDGE and

d/b/a SNOQUALMIE RIDGE GOLF CLUB, CF ARCIS IV HOLDINGS, LLC, ARCIS EQUITY PARTNERS LLC, and BRIGHTSTAR GOLF SNOQUALMIE, LLC, remains pending.

DATED this 2nd day of August, 2018.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE