THE HONORABLE RICARDO S. MARTINEZ

1

2

3

4

5

U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

6

7   LAWRENCE HART, CLYDE STEPHEN
    LEWIS, JAMES PRESTI, and MICHAEL
8   RALLS, individually and on behalf of all
    others similarly situated,
9

10                   Plaintiffs,

11          v.

12   CF ARCIS VII LLC d/b/a THE CLUB AT
     SNOQUALMIE RIDGE, d/b/a TPC AT
13   SNOQUALMIE RIDGE, and d/b/a
     SNOQUALMIE RIDGE GOLF CLUB, CF
14   ARCI000S IV HOLDINGS, LLC, ARCIS
     EQUITY PARTNERS, LLC, BLAKE S.
15   WALKER, individually and on behalf of the
     marital community of BLAKE S. WALKER
16   and JANE DOE WALKER, and
     BRIGHTSTAR GOLF SNOQUALMIE, LLC,
17

18                   Defendants.

NO. 2:17-CV-01932-RSM

**PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT**

**Note on Motion Calendar:
   August 16, 2019**

19

20

21

22

23

24

25

26

27

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1

2

## TABLE OF CONTENTS

Page No.

I.    INTRODUCTION ...................................................................................1

II.   STATEMENT OF FACTS ......................................................................1

      A.    Factual and procedural background ...........................................1

      B.    Arcis's motions to dismiss .........................................................3

      C.    Arcis produced evidence regarding Plaintiffs' breach of contract
            claim which allowed Plaintiffs to determine the amount of damages
            available at trial .........................................................................4

      D.    The parties' mediation laid the groundwork for settlement ................5

      E.    The proposed Settlement ............................................................5

            1.    The Settlement Class ........................................................5

            2.    The Settlement's monetary relief ......................................6

            3.    Attorneys' fees and costs ..................................................7

            4.    Costs of notice ..................................................................7

            5.    The Settlement's prospective relief ...................................7

                  a.    Arcis must pay Future Refunds from the sale of both
                        refundable and non-refundable memberships ..............7

                  b.    Arcis must make minimum refunds for the next three
                        years ........................................................................9

                  c.    Arcis cannot artificially discount the price of refundable
                        memberships ............................................................9

                  d.    Arcis must report semi-annually the number and amount
                        of new membership fees and refunds made ...............9

                  e.    Binding effect .........................................................10

            6.    The release ......................................................................10

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - i
CASE NO. 2:17-CV-01932-RSM

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1

7.  Notice and rights to opt out or object ....................................................10

III.  AUTHORITY AND ARGUMENT ............................................................................11

A.  Class action settlement approval process ...........................................................11

B.  The proposed Settlement Class should be preliminarily certified......................12

1.  The Settlement Class satisfies the requirements of Rule 23(a) ...............13

2.  The Settlement Class satisfies the requirements of Fed. R. Civ. P. 23(b)(3)...................................................................................13

C.  The proposed Settlement should be preliminarily approved ..............................14

1.  The strength of Plaintiffs' Case ...............................................................15

2.  The risk, expense, complexity, and likely duration of further litigation..................................................................................................16

3.  Class certification risk .............................................................................17

4.  The relief offered in Settlement...............................................................17

a.  The Settlement Agreement provides for substantial monetary relief.................................................................................17

b.  The Settlement Agreement provides for substantial prospective relief ...............................................................................18

5.  The extent of discovery completed and the stage of proceedings ...........19

6.  The experience and views of counsel.......................................................20

7.  The presence of a governmental participant............................................20

8.  The reaction of Settlement Class Members..............................................20

9.  The Settlement is the product of informed and non-collusive negotiations................................................................................................20

D.  Class Counsel's requested fees are reasonable...................................................22

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1

      E.      The proposed notice program is constitutionally sound......................................23

2

      F.      The schedule for final approval ..........................................................................23

3

IV.     CONCLUSION ..............................................................................................................24

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

# TABLE OF AUTHORITIES

Page No.

## FEDERAL CASES

*Amchem Prods., Inc. v. Windsor,*
　521 U.S. 591 (1997) ............................................................................12, 14

*Bellinghausen v. Tractor Supply Co.,*
　306 F.R.D. 245 (N.D. Cal. 2015) .....................................................20

*Eagle View Techs., Inc. v. Xactware Sols., Inc.,*
　No. C12-1913-RSM, 2013 WL 5945810 (W.D. Wash. Nov. 6, 2013)...........................18

*Churchill Village, L.L.C. v. Gen. Elec.,*
　361 F.3d 566 (9th Cir. 2004)...............................................................15

*Class Plaintiffs v. City of Seattle,*
　955 F.2d 1268 (9th Cir. 1992) ...........................................................11

*Hanlon v. Chrysler Corp.,*
　150 F.3d 1011 (9th Cir. 1998) ..........................................................13, 14

*Ikuseghan v. Multicare Health Sys.,*
　No. 3:14-cv-05539-BHS, 2016 WL 3976569 (W.D. Wash. July 25, 2016) ..................21

*In re Bluetooth Headset Prods. Liab. Litig.,*
　654 F.3d 935 (9th Cir. 2011) ...........................................................21, 22

*In re Mego Fin. Corp.,*
　213 F.3d 454 (9th Cir. 2000) ...........................................................19

*In re Mercury Interactive Corp. Sec. Litig.,*
　618 F.3d 988 (9th Cir. 2010) ...........................................................7, 19

*In re Online DVD-Rental Antitrust Litig.,*
　779 F.3d 934 (9th Cir. 2015) ...........................................................12

*In re Wash. Pub. Power Supply Sys. Sec. Litig.,*
　19 F.3d 1291 (9th Cir. 1994) ...........................................................22

*Johnson v. Metro-Goldwyn-Mayer Studios Inc.,*
　No. C17-541RSM, 2018 WL 5013764 (W.D. Wash. Oct. 16, 2018) ............................19

**Terrell Marshall Law Group PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ......................................................................23

*Ortiz v. Fireboard Corp.*,
    527 U.S. 815 (1999) ......................................................................21

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ......................................................22

*Wal-Mart Stores, Inc. v Dukes*,
    313 S.Ct. 2541 (2011) ..................................................................13

*Yamada v. Nobel Biocare Holding AG*,
    825 F.3d 536 (9th Cir. 2016) ........................................................22

**STATE STATUTES**

RCW 25.15.309(1) ...............................................................................3

**FEDERAL RULES**

Fed. R. Civ. P. 23(a) ...........................................................................13

Fed. R. Civ. P. 23(a)(1) .......................................................................13

Fed. R. Civ. P. 23(a)(3) .......................................................................13

Fed. R. Civ. P. 23(a)(4) .......................................................................13

Fed. R. Civ. P. 23(b)(3) ................................................................13, 14

Fed. R. Civ. P. 23(e) ...........................................................................11

Fed. R. Civ. P. 23(e)(1) .......................................................................23

Fed. R. Civ. P. 23(e)(2) .......................................................................15

**OTHER AUTHORITIES**

*Manual for Complex Litigation (Fourth)* § 21.312 (Ann. ed., 2017).........................................23

*Manual for Complex Litigation (Fourth)* §§ 21.632 – 21.634 (Ann. ed., 2017)........................12

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - v
CASE NO. 2:17-CV-01932-RSM

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    William B. Rubenstein, *Newberg on Class Actions* § 8:17 (5th ed. 2016 Supp.) .......................23

2    William B. Rubenstein, *Newberg on Class Actions* § 13:1 (5th ed. 2016 Supp.)................11, 16

3    William B. Rubenstein, *Newberg on Class Actions* § 13:13 (5th ed. 2016 Supp.) ....................12

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

# I. INTRODUCTION

Plaintiffs Clyde Stephen Lewis, James Presti, and Michael Ralls ("Plaintiffs") move for preliminary approval of the class action Settlement they reached with Defendants CF Arcis VII LLC d/b/a The Club at Snoqualmie Ridge ("the Club"), CF Arcis IV Holdings, LLC, and Arcis Equity Partners, LLC (collectively, "Arcis"), which finally resolves claims that Arcis breached its contract with Settlement Class Members when it introduced non-refundable memberships without notice and approval of the Settlement Class, failed to refund refundable memberships from the sale of non-refundable memberships, and limited the frequency with which proposed Settlement Class Members could receive refunds. The Settlement requires Arcis to pay a total of $240,000 and to provide valuable prospective relief for the Settlement Class that requires Arcis to make refunds based on the sale of both refundable and non-refundable memberships, accelerates the rate at which Arcis makes refunds, and eliminates Arcis's ability to establish an artificially low price for refundable memberships.

For the reasons set forth below, the Settlement is fair, adequate, reasonable, and in the best interests of the Settlement Class. Accordingly, Plaintiffs respectfully ask the Court to take the following initial steps in the settlement approval process: (1) grant preliminary approval to the settlement; (2) provisionally certify the proposed settlement class; (3) appoint as Class Counsel the law firm of Terrell Marshall Law Group PLLC; (4) appoint Clyde Stephen Lewis, James Presti, and Michael Ralls as class representatives; (5) approve the proposed notice plan; and (6) schedule the final settlement hearing and related dates.

# II. STATEMENT OF FACTS

## A.    Factual and procedural background.

Arcis operates The Club at Snoqualmie Ridge, a membership-only golf club in Snoqualmie, Washington ("the Club"). ECF No. 18 at ¶¶ 3.5-3.7. The Club has, since its founding, sold refundable memberships for a large, one-time membership fee, followed by monthly dues. *Id.* at ¶ 4.2. Before Arcis purchased the Club in 2013, the Club's Membership

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 1
CASE NO. 2:17-CV-01932-RSM

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1 and Operating Policies ("the Rules") allowed members to voluntarily resign and receive a

2 partial refund of their membership fee calculated as 70 percent of the then-current price of the

3 refundable membership after the Club sold three new memberships. *Id.* at ¶ 4.7. Those

4 members waiting to receive refunds were placed on a Refund List. At the time Arcis purchased

5 the Club, 176 members had already placed themselves on the Refund List, including Steve

6 Lewis, who joined the list in 2007, and Jim Presti, who joined the list in 2008. Declaration of

7 Beth E. Terrell ("Terrell Decl.") ¶ 10.

8       Near the time that Arcis purchased the Club, the Rules were amended to create a new

9 class of non-refundable memberships, which Arcis began selling at roughly half the price of

10 refundable memberships. The sale of non-refundable memberships all but eliminated the sale of

11 refundable memberships, delaying resigning members' refunds indefinitely. ECF No. 18 at

12 ¶¶ 4.10, 4.12. Arcis also refused to use money from the sale of non-refundable memberships to

13 pay refunds. *Id.* at ¶ 4.9.

14       The original Rules required that members receive notice of potential rule amendments

15 that materially adversely affected members' refund rights and required the approval of two-

16 thirds of the members. ECF No. 18 at ¶¶ 4.13, 4.14. Plaintiffs maintain that the 2013

17 amendment to add non-refundable memberships materially and adversely affected members'

18 refunds because Arcis sold the non-refundable memberships for half the price of refundable

19 memberships, effectively ending the sale of refundable memberships altogether. Yet, despite

20 the impact on members' refund rights, the Rules were amended without notice to members or

21 the membership's requisite supermajority approval. *Id.* at ¶ 4.15. Following the amendments,

22 additional Club members, including Plaintiff Mike Ralls, joined the Refund List.

23       After investigating the claims and unsuccessfully attempting to resolve the issues in

24 dispute with Arcis without resort to litigation, Plaintiffs filed a lawsuit in King County Superior

25

26

27

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 2
CASE NO. 2:17-CV-01932-RSM

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

Court in December 2017 against Arcis and its CEO.[1] Terrell Decl. ¶¶ 2-4. Plaintiffs contend that before it purchased the Club, Arcis colluded with the Club's prior owner to adopt the Rule amendments in secret, depriving Settlement Class Members of the refund right guaranteed by the Rules. ECF No. 18 at ¶ 4.8. Plaintiffs alleged that Arcis's behavior subjected it to liability under Washington's Consumer Protection Act ("CPA"), and for breach of contract and unjust enrichment. *See* ECF No. 1-2. Arcis subsequently removed the case to federal court. By this time, despite Arcis having made some refunds, the Refund List had grown to 248, with Mr. Lewis at No. 17, Mr. Presti at No. 60, and Mr. Ralls at No. 174. Terrell Decl. ¶ 10.

**B.    Arcis's motions to dismiss.**

Arcis moved to dismiss on January 19, 2018. Arcis argued that Plaintiffs' CPA and unjust enrichment claims were barred by the statute of limitations, that Arcis's behavior was not deceptive or unfair as a matter of law, and that Plaintiffs could not satisfy the public interest element of the CPA. *See, generally,* ECF No. 10. Arcis also argued that Plaintiffs' breach of contract claim failed because the Rules authorize the Club's owner to add other classes of membership, Plaintiffs could not show their refunds would have been paid had the Rules never been changed, and even if they could, the Rules did not require Arcis to pay refunds from the sale of non-refundable memberships. *Id.* Arcis also explained that it had adopted a Voluntary Refund Policy ("VRP") in 2016, which accelerated refunds without regard to the sale of refundable memberships. *Id.* Under the VRP, which Arcis implemented on a voluntary basis three years after it purchased the Club, Arcis paid refunds with proceeds from the sale of both non-refundable and refundable memberships. ECF No. 11 at pp. 48-49.

---

[1] In addition to Mssrs. Lewis, Presti, and Ralls, Lawrence Hart was an original named Plaintiff. The Court authorized Mr. Hart's withdrawal from the case on March 14, 2019. ECF No. 33. Plaintiffs named as a defendant Brightstar Golf Snoqualmie, LLC, who sold the Club to Arcis, but were ultimately unable to seek relief against Brightstar, which dissolved in November 2013. *See* ECF No. 1 at ¶ 17; *see also* RCW 25.15.309(1) (barring claims against dissolved entities if not filed within three years of dissolution).

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 3
CASE NO. 2:17-CV-01932-RSM

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

At the parties' request, the Court extended briefing deadlines to provide the parties time to negotiate a resolution of the litigation before Plaintiffs amended their complaint (ECF No. 18) and Arcis renewed its motion to dismiss. *See* ECF No. 17; ECF No. 20. After those negotiations failed, Plaintiffs amended their complaint to include factual allegations that would cure Arcis's statute of limitations argument and pled conversion in lieu of unjust enrichment. *See, generally,* ECF No. 18. Arcis renewed its motion to dismiss on May 10, 2018 (ECF No. 20), and despite Plaintiffs' vigorous opposition to Arcis's motion (ECF No. 23), on August 2, 2018, the Court partially granted Arcis's motion (ECF No. 26). Because there were no allegations that persons outside the Club were injured by the amendment of the Rules, the Court held that Plaintiffs "failed to show a public interest impact" and dismissed Plaintiffs' CPA claim. ECF 26 at 6:9-10. The Court also dismissed Plaintiffs' conversion claim and all claims against Arcis's CEO. *Id*. However, the Court allowed Plaintiffs' breach of contract claim against Arcis to proceed. *Id.* at 9-11.

**C.   Arcis produced evidence regarding Plaintiffs' breach of contract claim which allowed Plaintiffs to determine the amount of damages available at trial.**

Before the Court's decision on Arcis's motion to dismiss, the parties engaged in informal discovery regarding the Refund List, the number of memberships Arcis sold, and the number of refunds Arcis paid. Terrell Decl. ¶ 8. Arcis provided Plaintiffs with a list of refunds requested by members prior to Arcis's purchase, and a current list that showed the number of requested refunds since Arcis bought the Club. Declaration of Stephen M. Rummage Pursuant to Settlement Agreement ("Rummage Decl.") at ¶ 3; *see also* Declaration of James Hochrine Pursuant to Settlement Agreement ("Hochrine Decl.") at ¶ 2. Arcis also provided Plaintiffs with membership statistics and information regarding refunds the Club made both before and after Arcis's adoption of the VRP. *Id.* Finally, Arcis provided Plaintiffs with an anonymized list of memberships sold since Arcis acquired the Club, including date, price, and type. *Id.*

After the Court entered its order on Arcis's motion to dismiss, the parties' communications centered on the scope of damages for Plaintiffs' remaining claim for breach of

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 4
CASE NO. 2:17-CV-01932-RSM

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

contract. Terrell Decl. ¶ 9. Under the Rules, Arcis was to refund $27,300 (70% of the cost of a $39,000 refundable membership) for every $117,000 in memberships it sold (i.e., for every three memberships at $39,000 each). In formulaic terms, that meant the Club would refund 23.3% of what it received for refundable memberships, a percentage that would hold true no matter what price Arcis set for refundable memberships.

Arcis's potential possible exposure could be calculated from (a) the amounts it received for selling individual memberships before it implemented the VRP, including both cash and notes (without taking into account write-offs); (b) multiplied by 23.3% to determine how much Arcis should have refunded under Plaintiffs' breach of contract theory; and (c) subtracting amounts paid toward refunds Arcis made after it acquired the Club but before it implemented the VRP. The result—$278,000—was the amount of damages Plaintiffs could obtain at trial if they prevailed.

**D.    The parties' mediation laid the groundwork for settlement.**

On May 8, 2019, after Arcis provided substantial information regarding the scope of potential damages for breach of contract, the parties mediated with James Smith of Smith & Hennessey. Terrell Decl. ¶ 12. Mediation was unsuccessful. *Id*. However, the parties continued working with Mr. Smith and eventually accepted a mediator's proposal for a class wide settlement. In July 2019, the parties finalized the Settlement Agreement, which has been filed as Exhibit A to the Declaration of Beth E. Terrell in Support of Preliminary Approval. The terms are summarized below.

**E.    The proposed Settlement.**

The full details of the Settlement are contained in the parties' Settlement Agreement. *See* Settlement Agreement §§ 4.01-7.01.

1.    The Settlement Class.

For purposes of settlement, the parties have stipulated to certification of the following class:

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 5
CASE NO. 2:17-CV-01932-RSM

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

> All persons who prior to preliminary approval purchased refundable Individual Golf Memberships with the Club, as that membership is defined in the June 30, 2008 Membership and Operating Policies, but who have not yet received refunds.

*Id.* at § 1.11.

There are 334 Settlement Class Members. Terrell Decl. ¶ 10.

2.    The Settlement's monetary relief.

The Settlement Agreement requires Arcis to immediately pay a total of $240,000 for the benefit of the Settlement Class (the "Distribution Amount"). Settlement Agreement § 1.03. Of this amount, $181,000 will be used to pay Immediate Refunds to eight Settlement Class Members who accept the refunds, as follows: Within thirty days of final approval, Class Counsel will offer Immediate Refunds to the first eight proposed Settlement Class Members on the waiting list for refunds. *Id.* at § 4.02. The refunds will be made in the following amounts: (1) $24,375; (2) $23,875; (3) $23,375; (4) $22,875; (5) $22,375; (6) $21,875; (7) $21,375; and (8) $20,875. *Id.* at § 2.01(a). *Id.* at § 5.01. Class Counsel will offer the first refund to the Settlement Class Member at the top of the Refund List, and if that member declines, Counsel will offer the refund to the next Settlement Class Member on the list, and so on, until all eight refunds have been accepted. *Id.* at § 402.

A Settlement Class Member may choose to decline an Immediate Refund for any reason, including if the amount offered is lower than a Settlement Class Member could expect to receive by waiting for a Future Refund. For example, if the Club's refundable membership remains priced at the current price of $39,000, a Settlement Class Member at the top of the Refund List stands to receive a refund of $27,300 if he or she waits instead of receiving an Immediate Refund of $24,375. This mechanism gives Settlement Class Members at the top of the Refund List the option for immediate monetary relief while still affording them the opportunity to choose to continue waiting for a potentially larger refund.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 6
CASE NO. 2:17-CV-01932-RSM

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

3.      Attorneys' fees and costs.

The Settlement Agreement provides that Class Counsel may request that the Court approve an award of attorneys' fees and litigation expenses not to exceed $59,000. Settlement Agreement § 1.03(b). Within 60 days after transmission of Notice, Class Counsel will file a fee petition with the Court requesting approval of an award to compensate and reimburse them for the work already performed in this case and the work remaining to be performed in connection with the Settlement. Class Counsel's lodestar already exceeds $59,000, and Class Counsel have incurred more than $9,000 in out-of-pocket costs in prosecuting this action. Terrell Decl. ¶¶ 32-33.

The Settlement Agreement is not contingent on the amount of attorneys' fees or costs awarded. In accordance with *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010), Class Counsel's fee petition will be filed thirty days before the deadline for Settlement Class members to object. Terrell Decl. ¶ 31. Class Counsel will also provide the Court with details regarding their time and out-of-pocket expenses. *Id.* at ¶ 33.

4.      Costs of notice.

Arcis will pay all costs of Notice separately from the Distribution Amount. Settlement Agreement § 3.03.

5.      The Settlement's prospective relief.

The Settlement provides significant prospective relief designed to increase the rate of refunds going forward. Specifically, Arcis has agreed to the following requirements:

> a.      *Arcis must pay Future Refunds from the sale of both refundable and non-refundable memberships.*

Contrary to Arcis's pre-VRP practice of paying refunds only from the sale of refundable memberships, the Settlement Agreement requires that Arcis use money received from the sale of both refundable and non-refundable memberships to pay Future Refunds until all refunds are paid. In 2013, Arcis changed the Rules to include a new class of non-refundable memberships and sold them for half the price of refundable memberships. As a result, members of the public

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 7
CASE NO. 2:17-CV-01932-RSM

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  no longer had any incentive to purchase refundable memberships for twice the price. Because

2  Arcis has consistently maintained that the Rules do not require it to make refunds based on the

3  sale of non-refundable memberships, refunds all but stopped after Arcis purchased the Club.

4  Three years later, Arcis eventually made refunds with sales proceeds of both non-refundable

5  and refundable memberships according to the VRP. But the VRP was discretionary; Arcis

6  reserved the right to change or abolish the terms at any time.

7      The Settlement eliminates Arcis's discretion, requiring it to make refunds based on "Net

8  Membership Fees," which is all money received from the sale of both refundable and non-

9  refundable memberships. Settlement Agreement §§ 1.07, 5.01. If the Club has fewer than 420

10  Active Golf Members, a Settlement Class Member at the top of the Refund List will receive a

11  refund valued at 70 percent of the then-current price of a refundable membership once the Club

12  has collected membership fees equal to three times the refund amount. *Id.* at § 5.01(a). If the

13  Club has 420 or more Active Golf Members, the Settlement Class Member at the top of the

14  Refund List will be entitled to a refund equal to 85 percent of the then-current price of a

15  refundable membership, once the Club has collected membership fees equal to one-and-a-half

16  times the refund amount. *Id*. at § 501(b).

17      For example, if the Club has 300 Active Golf Members and the Club's refundable

18  memberships are currently priced at $39,000, a Settlement Class Member will receive a refund

19  of $27,300 after the Club raises $81,900 in new membership fees. Alternatively, if the Club has

20  450 Active Golf Members and the Club's refundable memberships are currently priced at

21  $39,000, a Settlement Class Member will receive a refund of $33,150 after the Club raises

22  $49,725 in new membership fees.

23      In all cases going forward, the amount of membership fees the Club receives on golf

24  memberships, and not the type of membership it sells, will determine when a Future Refund is

25  issued. This procedure will increase the rate at which the Club issues Future Refunds because

26  Settlement Class Members will only have to wait until the Club's sales of both non-refundable

27

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 8
CASE NO. 2:17-CV-01932-RSM

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  and refundable memberships have generated enough revenue to issue a Future Refund rather

2  than waiting for the Club to sell only refundable memberships.

3        b.    *Arcis must make minimum refunds for the next three years.*

4      Separate and apart from the refunds Arcis must make based on requirements described

5  above, the Settlement requires Arcis to issue to Settlement Class Members no fewer than four

6  refunds per year in 2020, 2021, and 2022, regardless of how many memberships the Club sells

7  in those years. Settlement Agreement § 5.01(d).

8        c.    *Arcis cannot artificially discount the price of refundable memberships.*

9      The Settlement also prohibits Arcis from selling refundable memberships at a price that

10  is less than 150 percent of the then-current published price for non-refundable memberships.

11  Settlement Agreement § 5.01(c). This provision prohibits Arcis from artificially deflating the

12  value of Settlement Class Members' refunds by lowering the price of refundable memberships.

13  For example, if non-refundable memberships are priced at $20,000, the Club must sell

14  refundable memberships for at least $30,000. Arcis has always retained the right to unilaterally

15  change the price of refundable memberships. ECF No. 11 at p. 15, § 2.2. The Settlement

16  prohibits Arcis from setting a price for refundable memberships that is lower, or only

17  marginally higher than, non-refundable memberships.

18
19        d.    *Arcis must report semi-annually the number and amount of new*
           *membership fees and refunds made.*

20      For seven years beginning June 20, 2019, Arcis shall also provide Settlement Class

21  Members a semi-annual report describing the amount of new membership fees it has received

22  and the number and amount of refunds issued in the previous year. Settlement Agreement §

23  5.02. Arcis shall send the statements by email if available, or by U.S. mail to all Settlement

24  Class Members who have not yet received a refund. *Id.* Thereafter, Arcis shall supply this

25  information to Settlement Class Members upon request. *Id.*

26
27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

e.     *Binding effect.*

The Settlement is binding on Arcis's successors and will survive the sale or transfer of the Club and/or Club Assets. Settlement Agreement § 8.07. The Settlement also inures to the benefit of Settlement Class Members' heirs. *Id.*

6.     The release.

The release is appropriately tailored based on the claims made in the case. In exchange for the benefits provided by the Settlement, Settlement Class Members will release any claims that Arcis unlawfully introduced non-refundable memberships and materially limited the frequency with which members with refundable memberships could receive refunds without the required notice or membership approval, as well as any other claims arising out of or relating in any way to changes made to the June 30, 2008 Membership and Operating Polices. Settlement Agreement §§1.16, 6.02.

7.     Notice and rights to opt out or object.

Arcis will bear the cost of providing notice to the Class of the pendency of this action and the proposed settlement. Settlement Agreement § 2.02. Within thirty-five days after entry of the Preliminary Approval Order Arcis shall provide notice to the Class of the proposed settlement in the form approved by the Court. *Id*. at § 3.03. Arcis shall transmit notice to all Settlement Class Members by email, if available, or by U.S. mail. *Id.* Class Counsel will establish a website with information about the Settlement, including a copy of the Settlement Agreement, the operative Complaint, documents related to Arcis's Motion to Dismiss, and the Order Granting in Part and Denying in Part Arcis's motion, and Plaintiffs' Motion for Award of Fees and Costs. Terrell Decl. ¶ 35. Class Counsel will also create a toll-free telephone number that Settlement Class Members may call to determine their position on the Refund List. *Id.* Settlement Class Members may also call the Club directly to determine their place on the Refund List. *Id.* at ¶ 36.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 10
CASE NO. 2:17-CV-01932-RSM

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    Settlement Class Members will have ninety days from the transmission of Notice to opt

2    out of the Settlement Class or to submit objections. Settlement Agreement at § 1.08 and § 1.09.

3    Within thirty days of Final Approval, Class Counsel shall begin the process for paying

4    the Immediate Refunds from the Distribution Amount. *Id.* § 4.02. Class Counsel will offer the

5    first refund to the Class Member then at the top of the Refund List. *Id.* If that Class Member

6    declines the refund, the refund will be offered to the next Class Member on the list, and so on,

7    until a Class Member on the Refund List accepts that first refund. *Id.* The second through

8    eighth refunds will be offered in turn to Class Members in the same fashion, until all eight

9    refunds have been accepted. *Id.* No funds will revert to Arcis.

10    ### III.  AUTHORITY AND ARGUMENT

11    **A.    Class action settlement approval process.**

12    Proposed class action settlements are not effective unless approved by the Court. Fed.

13    R. Civ. P. 23(e). As a matter of "express public policy," federal courts strongly favor and

14    encourage settlements, particularly in class actions and other complex matters, where the

15    inherent costs, delays, and risks of continued litigation might otherwise overwhelm any

16    potential benefit the class could hope to obtain. *Class Plaintiffs v. City of Seattle*, 955 F.2d

17    1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements,

18    particularly where complex class action litigation is concerned"); *see also* William B.

19    Rubenstein, *Newberg on Class Actions* ("*Newberg*") § 13:1 (5th ed. 2016 Supp.) (citing cases).

20    The traditional means for handling claims like those at issue here—individual litigation—

21    would unduly tax the court system, require a massive expenditure of public and private

22    resources, and, given the small value of the claims of the individual class members, would be

23    wholly impracticable. The proposed Settlement is the best vehicle for Settlement Class

24    Members to receive relief in a prompt and efficient manner.

25    The Manual for Complex Litigation describes a three-step procedure for approval of

26    class action settlements: (1) preliminary approval of the proposed settlement; (2) dissemination

27

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 11
CASE NO. 2:17-CV-01932-RSM

1    of notice of the settlement to all affected class members; and (3) a "fairness hearing" or "final

2    approval hearing," at which class members may be heard regarding the settlement, and at which

3    evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement

4    may be presented. *Manual for Complex Litigation (Fourth)* §§ 21.632 – 21.634 (Ann. ed.,

5    2017) ("MCL 4th"). This procedure safeguards class members' due process rights and enables

6    the court to fulfill its role as the guardian of class interests. *See* William B. Rubenstein,

7    *Newberg on Class Actions* § 13:1 (5th ed. 2016 Supp.) ("*Newberg*").

8        Plaintiffs respectfully ask the Court to take the first step in the settlement approval

9    process by granting preliminary approval of the proposed Settlement Agreement. The purpose

10    of preliminary evaluation of proposed class action settlements is to determine whether the

11    settlement is "within the range of possible approval" and thus whether notice to the class is

12    worthwhile. *Newberg* § 13:13. This Court has broad discretion to approve or reject a proposed

13    settlement. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942 (9th Cir. 2015) (noting

14    standard of review is "clear abuse of discretion").

15        When a case settles before class certification, the Court must also determine whether the

16    class satisfies the Rule 23 requirements for class certification. Because a settled case will not be

17    tried, manageability considerations are not relevant. *Amchem Prods., Inc. v. Windsor*, 521 U.S.

18    591, 620 (1997).

19    **B.    The proposed Settlement Class should be preliminarily certified.**

20        Provisional certification of a class for settlement purposes permits notice of the

21    proposed settlement to issue to the class to inform class members of the existence and terms of

22    the proposed settlement, of their right to be heard on its fairness, of their right to opt out, and of

23    the date, time and place of the formal fairness hearing. *See* MCL 4th §§ 21.632, 21.633. For the

24    reasons set forth below, provisional certification is appropriate under Rule 23(a) and (b)(3).

25

26

27

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 12
CASE NO. 2:17-CV-01932-RSM

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    1.    The Settlement Class satisfies the requirements of Rule 23(a).

2    The Rule 23(a) requirements are numerosity, commonality, typicality, and adequacy.

3    Fed. R. Civ. P. 23(a). Arcis has confirmed that there are 334 members of the Settlement Class.

4    Joinder of all such persons is impracticable. *See* Fed. R. Civ. P. 23(a)(1); *Hanlon v. Chrysler*

5    *Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Thus, numerosity is satisfied.

6    Commonality is satisfied where issues of law or fact are common to the class. *Wal-Mart*

7    *Stores, Inc. v Dukes*, 313 S.Ct. 2541, 2551 (2011) (quoting *Gen. Tel. Co. of the Sw. v. Falcon*,

8    102 S.Ct. 2364, 2366 (1982)). Here, there are common questions of law and fact regarding

9    whether Arcis complied with the notice and voting requirements under the Rules when they

10    implemented the amendment and whether the Revised Rules materially adversely affected

11    Settlement Class Members' interests. Commonality is therefore satisfied.

12    Typicality is satisfied where the named plaintiffs' claims and injuries are typical of, or

13    "reasonably coextensive with those of absent class members." *See* Fed. R. Civ. P. 23(a)(3);

14    *Hanlon,* 150 F.3d at 1020. Settlement Class Members, including Plaintiffs Lewis, Presti, and

15    Ralls, all suffered substantially the same injury. The refund right of each was materially and

16    adversely affected by Arcis's decision to amend the Rules to add a class of non-refundable

17    memberships without first providing notice to, and obtaining approval of, the members.

18    The adequacy of representation requirement is satisfied because Plaintiffs' interests are

19    coextensive with, and not antagonistic to, the interests of the Plaintiff Class. *See* Fed. R. Civ. P.

20    23(a)(4). Further, Plaintiffs are represented by qualified and competent counsel who have

21    extensive experience and expertise in prosecuting consumer class actions. Terrell Decl.

22    ¶¶ 16-25.

23    2.    The Settlement Class satisfies the requirements of Fed. R. Civ. P. 23(b)(3).

24    Class certification is appropriate under Rule 23(b)(3) when "questions of law or fact

25    common to the members of the class predominate over any question affecting only individual

26    members, and … a class action is superior to other available methods for the fair and efficient

27    adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Both requirements are satisfied here.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 13
CASE NO. 2:17-CV-01932-RSM

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    The predominance requirement "test[s] whether proposed classes are sufficiently

2    cohesive to warrant adjudication by representation." *Amchem Prod.*, 117 S.Ct. at 2249; *see also*

3    Fed. R. Civ. P. 23(b)(3). Arcis's conduct— amending the Rules without the requisite notice and

4    selling non-refundable memberships that materially adversely affect Settlement Class

5    Members' refund rights—is uniform to all members of the Settlement Class. There are no

6    individualized issues that undermine predominance.

7    Resolution of hundreds of claims in one action is far superior to individual lawsuits and

8    promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). It would be

9    impracticable and inefficient to resolve each of the 334 Settlement Class Members' claims

10   individually. Moreover, absent a class action, most Settlement Class Members likely would

11   find the cost of litigating their claims prohibitive. Class treatment is superior to multiple

12   individual suits or piecemeal litigation because it conserves judicial resources, promotes

13   consistency of adjudication, and deters illegal activities.

14   The requirements of both Rule 23(a) and (b)(3) are met and certification of the

15   Settlement Class for purposes of settlement is appropriate.

16   **C.    The proposed Settlement should be preliminarily approved.**

17   The court's role at the settlement approval stage is to ensure "the agreement is not the

18   product of fraud or overreaching by, or collusion between, the negotiating parties, and that the

19   settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *Hanlon*, 150

20   F.3d at 1027 (quoting *Officers for Justice v. Civil Service Com'n of City and Cnty. of San*

21   *Francisco*, 688 F.2d 615, 625 (1982)) (internal quotations omitted).

22   Courts consider the following factors in determining whether a proposed class

23   settlement is fair, reasonable, and adequate: (1) the strength of the plaintiffs' case; (2) the risk,

24   expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class

25   action status through trial; (4) the amount offered in settlement; (5) the extent of discovery

26   completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the

27

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 14
CASE NO. 2:17-CV-01932-RSM

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    presence of a governmental participant; and (8) the reaction of class members to the proposed

2    settlement. *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

3        In addition, recent amendments to Rule 23(e) require the Court to consider whether (A)

4    the class representatives and class counsel have adequately represented the class; (B) the

5    proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking

6    into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any

7    proposed method of distributing relief to the class, including the method of processing class-

8    member claims; (iii) the terms of any proposed award of attorney's fees, including timing of

9    payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the

10   proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

11       Although preliminary approval only requires that the Settlement fall "within the range

12   of possible approval," the parties' proposed Settlement exceeds that threshold and all factors

13   support a finding that the settlement is fair, reasonable, and adequate.

14       1.    The strength of Plaintiffs' Case.

15       Plaintiffs are confident in the strength of their case, but they also faced risks. Arcis

16   continues to deny the material allegations and denies all liability with respect to Plaintiffs'

17   claims. Settlement Agreement § C. Although the Court denied Arcis's request to dismiss

18   Plaintiffs' breach of contract claim, Plaintiffs still faced significant hurdles in addressing

19   Arcis's defenses. For example, Arcis argued that it did not violate the Rules by amending them

20   to add non-refundable memberships because the Rules expressly authorized Arcis to not only

21   created new categories of memberships, but also to unilaterally establish the membership

22   prices. Plaintiffs strongly disagree and maintain that a fact-finder would find for them at trial

23   and conclude that Arcis should have provided members with notice that it intended to add a

24   non-refundable membership and the opportunity to vote. But if a fact-finder instead agreed with

25   Arcis's interpretation of the Rules, Plaintiffs' breach of contact claim would fail.

26

27

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 15
CASE NO. 2:17-CV-01932-RSM

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    Arcis also argued that even if it should have provided notice and put the amendment to

2    a membership vote, Plaintiffs did not suffer any damages because there was no right to demand

3    that Arcis use proceeds from the sale of non-refundable memberships to pay refunds. Plaintiffs

4    disagree with Arcis's interpretation of the Rules. However, the legal outcome was uncertain.

5    While the Court ultimately denied Arcis's argument that Plaintiffs' breach of contract claim

6    should be dismissed, the Court seemed initially to agree with Arcis that refunds need not be

7    paid from the sale of non-refundable memberships. *See* ECF No. 26 at 9:2-8 ("Plaintiffs do not

8    acknowledge, however, that the Rules in existence prior to 2013 entitled resigning members to

9    receive refunds after the third sale/reissuance of a membership in the *same category* as the

10    membership to be refunded …. Plaintiffs never held Non-Refundable memberships, and

11    therefore would not have been entitled to a refund after the sale of such memberships under the

12    Rules they claim govern their refunds."). If the Court concluded on summary judgment that

13    Arcis's interpretation was correct, Plaintiffs would have only a *de minimis* claim for damages.

14            2.    The risk, expense, complexity, and likely duration of further litigation.

15            Plaintiffs also had several other hurdles to clear before a successful resolution of their

16    breach of contract claim. Entering settlement negotiations, Plaintiffs and their counsel were

17    confident in the strength of their case but also pragmatic in their awareness of the risks inherent

18    to litigation. Absent a settlement, further litigation would be expensive, complex, lengthy, and

19    would almost certainly yield lesser relief for the Settlement Class. Plaintiffs would first have to

20    conduct formal discovery, including written discovery and depositions. Next, Plaintiffs would

21    need to prevail on a motion for class certification, followed by motions for decertification or

22    summary judgment, or both. By contrast, the Settlement provides prompt and certain relief for

23    Settlement Class Members. *See Newberg* § 13:1 (noting a "strong judicial policy in favor of

24    class action settlement").

25

26

27

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 16
CASE NO. 2:17-CV-01932-RSM

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

3. <u>Class certification risk.</u>

The proposed class has not yet been certified and Arcis maintains that this action is not suitable for class treatment. Settlement Agreement § C. Counsel for Defendants asserts that Arcis "planned to resist" Plaintiffs' motion for class certification. Rummage Decl. ¶ 7. While Plaintiffs are confident they could have certified a class and maintained certification through trial, Plaintiffs faced the risk that the Court would not certify a class.

4. <u>The relief offered in Settlement.</u>

a. *The Settlement Agreement provides for substantial monetary relief.*

The Settlement Agreement includes $181,000 for Immediate Refunds. Were Plaintiffs to prevail on their allegation that Arcis must treat the sales of non-refundable and refundable memberships equally for the purposes of issuing refunds, Arcis should have issued a refund valued at $27,300 (or 70 percent of the cost of a $39,000 refundable membership) for every $117,000 in memberships it sold (i.e. the revenue generated from selling three memberships at $39,000 each). *Id.* at ¶ 6. Arcis provided documentation that showed that if Plaintiffs were to prevail at trial, the maximum damages for the period of time in which Arcis did not pay refunds—between 2013, when Arcis purchased the Club, and 2016, when Arcis implemented the VRP—was $278,000. While the Settlement does not provide the Settlement Class with every penny they could have recovered after a successful trial, it provides them with the significant damages without any of the risk, and incorporates valuable prospective relief that might otherwise be unavailable after trial.

The Immediate Refund process itself is fair and equitable. As described in detail above, Class Counsel will offer eight refunds in specified amounts to Settlement Class Members at the top of the Refund List. Settlement Agreement § 4.02. This gives the first eight people on the Refund List—some of whom have been waiting since 2006—an opportunity to obtain a refund immediately or to refuse and continue to wait for a potentially higher refund amount. *Id.* The Immediate and Future Refund procedures were designed to ensure that no segment of the Settlement Class would be excluded from relief.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

b.    *The Settlement Agreement provides for substantial prospective relief.*

This negotiated prospective relief, which will provide Settlement Class Members with lasting benefits, is superior to any injunctive relief Settlement Class Members were likely to have obtained at trial. Contract actions carry two major equitable remedies: specific performance, which "orders a party to comply with the terms of the contract" and injunctive relief, which "typically orders a party to refrain from a particular act." *Eagle View Techs., Inc. v. Xactware Sols., Inc.,* No. C12-1913-RSM, 2013 WL 5945810, at *2 (W.D. Wash. Nov. 6, 2013). Had Plaintiffs prevailed at trial, neither remedy would have provided the valuable and comprehensive benefits the Settlement Agreement affords the Settlement Class.

Specific performance may have guaranteed Settlement Class Members the procedural protections in rule changes that the Club's Rules require. *See* Dkt. #11, Exh. B at ¶ 6.2. If Plaintiffs prevailed, Arcis would have to issue notice to Settlement Class Members and obtain the support of two-thirds of Club members. But there would be no guarantee that the process result would substantively be any better for Settlement Class Members. Even if members successfully defeated Arcis's efforts, any relief to the members would be further delayed. Moreover, an order for specific performance could not, by the terms of the contract, impose the type of relief the Settlement requires—changes to the refund process which accelerate refunds, and restrictions on how Arcis may price refundable memberships going forward.

An injunction ordering Arcis to refrain from particular acts would also likely fail to deliver relief as beneficial as the prospective relief negotiated in the Settlement Agreement. Much of the prospective relief requires more than mere abstention on the part of Arcis; it requires Arcis to act affirmatively to serve Settlement Class Members' interests beyond the rights and benefits guaranteed by the Club's Rules. For instance, Plaintiffs could have asked the Court to stop Arcis's sale of the non-refundable memberships, but that injunction would have eliminated only one barrier to recovery without ensuring procedures that accelerate Future Refunds. An injunction would not likely be tailored, as under the Settlement, to require Arcis to

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 18
CASE NO. 2:17-CV-01932-RSM

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

take affirmative steps to issue twenty refunds by the end of 2022. Under the Settlement, the parties used tools that would otherwise be unavailable in the normal course of litigation to afford the Settlement Class significant future benefits.

        5.    <u>The extent of discovery completed and the stage of proceedings.</u>

Under this factor, courts look to whether the parties have enough information to make informed decisions with respect to settlement. *See In re Mego Fin. Corp.*, 213 F.3d 454, 459 (9th Cir. 2000). Confirmatory discovery is appropriate at the preliminary approval stage if it is adequate to demonstrate a "factual basis for settling the case for the amount stipulated." *In re Mercury Interactive Corp. Sec. Litig.,* 618 F.3d 988, 990 (9th Cir. 2010) (noting, with approval, lead class counsel's use of confirmatory discovery); *see also* McLaughlin on Class Actions § 6:12 (15th ed. October 2018 update).

The parties are confident they have obtained all information necessary to arrive at a fair, adequate, and reasonable settlement. Arcis provided Class Counsel with a list of members who resigned, including information regarding the dates they joined and resigned, the amount paid for their memberships, and the anticipated refund amounts for each person on the list. Rummage Decl. at ¶ 2. Arcis also provided Class Counsel with documents showing the prices of non-refundable memberships and information regarding refunds the Club had issued. *Id* at ¶ 3; *see also* Hochrine Decl. at ¶ 2. Finally, Arcis provided declarations under penalty of perjury describing how it calculated Settlement Class Members' total potential recovery. Rummage Decl. at ¶¶ 6, 7; Settlement Agreement § 7.01. Class Counsel have sufficient information to adequately inform the settlement terms and believe that further discovery would not likely yield information necessary to obtain a better result for Settlement Class Members. *See Johnson v. Metro-Goldwyn-Mayer Studios Inc.*, No. C17-541RSM, 2018 WL 5013764, at *3 (W.D. Wash. Oct. 16, 2018) (where "little would seem to be gained through discovery or additional litigation as the class was unlikely to receive far superior relief," this factor does not weigh heavily against approval).

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

6.      The experience and views of counsel.

The recommendation of experienced counsel weighs in favor of granting approval. *See Bellinghausen v. Tractor Supply Co.,* 306 F.R.D. 245, 257 (N.D. Cal. 2015) ("The trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties." (citation omitted)). Here, Class Counsel have extensive experience representing plaintiffs in class action litigation, including contract disputes. Terrell Decl. ¶¶ 16-25. They believe the Settlement is fair, reasonable, adequate, and in the best interest of the Class as a whole. The fact that qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate weighs heavily in favor of preliminary approval.

7.      The presence of a governmental participant.

Although no government entity is party to this litigation, Arcis shall notify the appropriate state and federal officials of the proposed settlement in accordance with 28 U.S.C. § 1715 within ten days after the filing of the Motion for Preliminary Approval. *See* Settlement Agreement § 3.07. In connection with final approval proceedings, Arcis shall file a declaration establishing that the Class Action Fairness Act notice was timely provided. *Id.*

8.      The reaction of Settlement Class Members.

Within thirty-five days of this Court's entry of a Preliminary Approval Order, Arcis will provide notice of the proposed settlement to the Settlement Class. Settlement Agreement § 3.03. Settlement Class Members will have ninety days to object to the terms of the settlement or submit a written request for exclusion from the Settlement Class. *Id*. at §§ 1.08-09. Plaintiffs will provide the Court with information about Settlement Class Members' reaction in their motion for final approval.

9.      The Settlement is the product of informed and non-collusive negotiations.

The proposed settlement satisfies Rule 23(e)'s new requirements that it was negotiated at arm's length, the relief provided is adequate in light of the risks of trial and proposed attorney fee awards, and that class members are treated equitably relative to one another.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 20
CASE NO. 2:17-CV-01932-RSM

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    "Arm's length negotiations by competent counsel constitute *prima facie* evidence of fair

2    settlements." *Ikuseghan v. Multicare Health Sys.*, No. 3:14-cv-05539-BHS, 2016 WL 3976569

3    at *3 (W.D. Wash. July 25, 2016); *see also Ortiz v. Fireboard Corp.*, 527 U.S. 815, 852 (1999).

4    The Settlement is the product of adversarial, arm's-length settlement negotiations. The parties

5    were unable to resolve their dispute during months of informal negotiations. And their full-day

6    mediation failed. If both sides had not accepted the mediator's proposal, there would be no

7    settlement. None of the "subtle signs" of collusion are present. *In re Bluetooth Headset Prods.*

8    *Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). The Settlement does not provide counsel with

9    "a disproportionate distribution of the settlement." *Id*. As discussed below, the proposed award

10    for attorneys' fees and costs is modest compared to the expenses Class Counsel incurred. There

11    is no arrangement in which Arcis has agreed not to object to Class Counsel's fee request.

12    Terrell Decl. ¶ 32. And no amount of unclaimed fees will revert to Arcis. *Id*.

13    As discussed above, the negotiated relief is adequate, not only in light of the risks and

14    costs of trial and appeal, but also as compared to the potential relief attainable at trial in a

15    breach of contract action. Finally, each Settlement Class Member is treated equitably relative to

16    other Settlement Class Members: the negotiated relief provides for refunds at a faster pace than

17    Settlement Class Members could otherwise obtain without reducing the amount of money

18    Settlement Class Members are able to recover. Each Settlement Class Member will become

19    eligible for a refund in the same order in which he or she resigned; that some Settlement Class

20    Members will receive refunds before others is therefore not a sign of inequity. The parties

21    worked hard to create an effective, adequate method of distributing relief that will award

22    Immediate Refunds to eight Settlement Class Members and enable other Settlement Class

23    Members to receive refunds more quickly than they would have otherwise.

24

25

26

27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1

**D.    Class Counsel's requested fees are reasonable.**

2

Class Counsel intend to seek an award of no more than $59,000 to compensate them for

3

the work performed on behalf of the Settlement Class, as well as to reimburse them for out-of-

4

pocket expenses they have incurred in prosecuting this action.

5

The attorneys' fees and costs Class Counsel seek are reasonable under the

6

circumstances of this case. *See In re Bluetooth*, 654 F.3d at 941 (requiring that any attorneys'

7

fee awarded be reasonable). This Court has discretion to use either the percentage-of-the-fund

8

or the lodestar method to calculate a reasonable attorneys' fee from a common fund established

9

by a class action settlement. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002);

10

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1296 (9th Cir. 1994) ("in

11

common fund cases, no presumption in favor of either percentage or the lodestar method

12

encumbers the district court's discretion to choose one or the other").

13

The lodestar method is appropriate here because a large part of the relief obtained under

14

the Settlement Agreement is prospective and the lodestar method is often used "where the relief

15

sought and obtained is not easily monetized." *Yamada v. Nobel Biocare Holding AG*, 825 F.3d

16

536, 546 (9th Cir. 2016) (citation omitted). Class Counsel have spent hundreds of hours

17

prosecuting this case on behalf of the Settlement Class and their lodestar, to date, already

18

exceeds $59,000. Terrell Decl. ¶ 32. Finalizing the Settlement and overseeing distribution of

19

the Immediate Refunds will require additional time commitment. *Id*.

20

Class Counsel will file a fee petition detailing their work on behalf of the Settlement

21

Class and the basis for the fee request within thirty days of the deadline to object or opt out.

22

There, Class Counsel will also discuss the reasonableness of Class Counsel's requested fee

23

under a percentage-of-the fund cross check. Terrell Decl. ¶ 33.

24

Finally, Class Counsel have incurred over $9,000 in litigation expenses, $8,000 of

25

which was paid to mediator, James Smith, whose experience and efforts were instrumental to

26

the parties reaching the Settlement. Terrell Decl. ¶ 34.

27

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**E.    The proposed notice program is constitutionally sound.**

Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by" a settlement. Fed. R. Civ. P. 23(e)(1); *see also* MCL 4th § 21.312. The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Settlement Class Members can be identified through Arcis's records. The parties propose sending notice by email or mail in the form attached as Exhibit B to the Settlement Agreement.

Notice must generally inform class members of the following: (1) the nature of the pending litigation; (2) the general terms of the settlement; (3) the definition of the class; and (4) the options open to the class members—including the opportunity to submit claims, ask to be excluded, or object to the Settlement—and the deadlines for taking action. *See Newberg* § 8:17. The notice in this case provides all of this information in plain and easily understood language with neutral and objective information about the nature of the Settlement and where to find more information. Settlement Agreement, Ex. B. The Settlement Website will include the definition of the Settlement Class, a copy of the Notice, an explanation of how Settlement Class Members can opt out or object to the Settlement, copies of the operative Complaint, the Settlement Agreement, and other pertinent filings, as well as methods for contacting Class Counsel and the Club to obtain information regarding their position on the Refund List.

**F.    The schedule for final approval.**

The next steps in the settlement approval process are to schedule a final approval hearing, notify class members of the Settlement and hearing, and provide Settlement Class Members with the opportunity to exclude themselves from, or object to, the Settlement. The parties propose the following schedule for final approval of the settlement:

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

| ACTION | DATE |
|---|---|
| Preliminary Approval Order Entered | At the Court's Discretion |
| Deadline for transmission of Notice | 35 days after entry of Preliminary Approval Order |
| Class Counsel's Fee Motion Submitted | 60 days after transmission of Notice |
| Exclusion/Objection Deadline | 90 days after transmission of Notice |
| Final Approval Brief and Response to Objections Due | 14 days after deadline to object |
| Final Settlement Hearing | No earlier than 139 after the Preliminary Approval Order is entered |

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask the Court to take the following initial steps in the settlement approval process: (1) provisionally certify the Settlement Class; (2) appoint Plaintiffs as the Settlement Class representatives; (3) appoint Terrell Marshall Law Group PLLC as Class Counsel; (4) grant preliminary approval to the proposed settlement; (5) approve the proposed notice plan; and (6) schedule the settlement hearing.

RESPECTFULLY SUBMITTED AND DATED this 16th day of August, 2019.

TERRELL MARSHALL LAW GROUP PLLC

By:  /s/ Beth E. Terrell, WSBA #26759
Beth E. Terrell, WSBA #26759
Email:  bterrell@terrellmarshall.com
Adrienne D. McEntee, WSBA #34061
Email: amcentee@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

*Attorneys for Plaintiffs and the Proposed Class*

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 24
CASE NO. 2:17-CV-01932-RSM

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

CERTIFICATE OF SERVICE

I, Beth E. Terrell, hereby certify that on August 16, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Stephen M. Rummage, WSBA #11168
Email: steverummage@dwt.com
Rebecca J. Francis, WSBA #41196
Email: rebeccafrancis@dwt.com
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle Washington 98104-1610
Telephone: (206) 622-3150
Facsimile: (206) 757-7700

*Attorneys for Arcis Defendants*

DATED this 16th day of August, 2019.

TERRELL MARSHALL LAW GROUP PLLC

By:  /s/ Beth E. Terrell, WSBA #26759
Beth E. Terrell, WSBA #26759
Email: bterrell@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

*Attorneys for Plaintiffs*

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - 25
CASE NO. 2:17-CV-01932-RSM

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com